CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 24 2010

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ODYSSEY IMAGING, LLC, | ) |
| | ) Civil Action No. 7:10-cv-00361 |
| Plaintiff, | ) |
| | ) |
| v. | ) MEMORANDUM OPINION |
| | ) |
| CARDIOLOGY ASSOCIATES OF | ) |
| JOHNSTON, LLC, | ) By: Samuel G. Wilson |
| | ) United States District Judge |
| Defendant. | ) |

This is an action by plaintiff, Odyssey Imaging, LLC ("Odyssey"), against defendant, Cardiology Associates of Johnston, LLC ("Cardiology Associates"), for breach of a nuclear imaging services contract. Odyssey filed the case in the Circuit Court for the City of Roanoke, and Cardiology Associates removed it to this court, filed an answer asserting nineteen defenses it labels "affirmative defenses," and counterclaimed for breach of contract and unjust enrichment.[1] Odyssey has moved to dismiss Cardiology Associates' counterclaims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the ground that they fail to state plausible claims for relief, and has moved to strike Cardiology Associates' affirmative defenses pursuant to Rule 12(f) on the ground that they are neither plausible nor intelligible. The court agrees with Odyssey that Cardiology Associates' counterclaims fail to state plausible claims for relief, and grants the motion to dismiss them. The court also finds that all of Cardiology Associates' defenses, except

---

[1] Cardiology Associates is a North Carolina professional limited liability company, and its sole member is a citizen of North Carolina. Odyssey is a Virginia limited liability company, and none of its members are citizens of North Carolina. Additionally, the amount in controversy exceeds $75,000. Accordingly, jurisdiction exists pursuant to 28 U.S.C. §§ 1332 and 1441.

two, are either not affirmative defenses at all or are not contextually comprehensible, and strikes all but those two defenses.

## I.

The events giving rise to this litigation began on April 4, 2005, when the parties entered into a nuclear imaging services contract ("the contract") which required Odyssey to provide Cardiology Associates with nuclear imaging equipment and the staff to maintain and operate that equipment at Cardiology Associates' office in North Carolina, for a period of five years.[2] On July 29, 2009, the parties agreed in writing to extend the terms of the original contract until October 31, 2011.

Cardiology Associates sent Odyssey a letter on March 3, 2010, notifying Odyssey of its intent to terminate the contract in sixty days. On May 17, 2010, Cardiology Associates followed up that letter with another letter demanding that Odyssey remove all of its remaining equipment from Cardiology Associates' offices by May 24, 2010. It stated that it would charge Odyssey a "space rental fee" of $2,000 per week, retroactive to May 4, 2010, if Odyssey failed to comply with its demand. Odyssey responded that it would pursue legal action to enforce its rights under the contract, and within weeks filed its complaint asserting a breach of contract claim.

Cardiology Associates responded with two counterclaims and an answer asserting nineteen affirmative defenses. Cardiology Associates' first counterclaim alleges that Odyssey breached a unilateral contract when it failed to retrieve its imaging equipment or otherwise pay

---

[2] The terms of the contract provide that any dispute relating to the contract shall be governed by Virginia law. (Notice of Removal, Ex. A at 10.)

2

the $2,000 per week in storage fees Cardiology Associates demanded. Its second counterclaim alleges that its storage of Odyssey's equipment without payment constitutes unjust enrichment.

## II.

Odyssey has moved to dismiss Cardiology Associates' counterclaims under Rule 12(b)(6) on the ground that they fail to state plausible claims for relief. The court agrees, and grants Odyssey's motion.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion, the claimant's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (citation omitted). While the court must accept the claimant's factual allegations as true, Hemi Group, LLC v. City of N.Y., 130 S. Ct. 983, 986–87 (2010), this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The complaint must contain sufficient facts from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is entitled to relief. Id. at 1950; FED. R. CIV. P. 8(a). With these precepts in mind, the court concludes that Cardiology Associates has failed to plead plausible claims to relief for breach of contract or unjust enrichment.

## A.

Cardiology Associates claims a new, unilateral contract arose as a result of its May 17, 2010, letter to Odyssey demanding the removal of the imaging equipment, and Odyssey's

implicit acceptance of the letter's terms by failing to remove that equipment by the specified date. The court concludes that Cardiology Associates has not pleaded facts showing the mutual assent necessary to the formation of a contract. Accordingly, the court dismisses the claim.

Whether unilateral or bilateral, a contract is not formed without mutual assent. Phillips v. Mazyck, 273 Va. 630, 636 (2007) ("It is elementary that mutuality of assent . . . is an essential element of all contracts.") (internal quotation marks omitted). Courts "ascertain whether a party assented to the terms of a contract from that party's words or acts, not from his or her unexpressed state of mind." Id. Silence alone, without some other objective manifestation of assent, will not serve as acceptance of a contract. See id. at 637.

Here, letters exchanged by the parties and attached to Cardiology Associates' counterclaims show Odyssey's response to Cardiology Associates' demand was to insist that Cardiology Associates had breached the terms of the preexisting written contract, which Odyssey would seek to enforce through "legal action." It is hard to see how Odyssey's repudiation of Cardiology Associates' demand qualifies as assent to Cardiology Associates' rental "offer." Contract formation requires mutual assent. Based upon the facts Cardiology Associates has pleaded, it is implausible that Odyssey assented to Cardiology Associates' demand by merely failing to retrieve its imaging equipment as quickly as Cardiology Associates demanded. Without plausibly demonstrating that Odyssey assented to Cardiology Associates' proposal, Cardiology Associates has not made the requisite showing that it is entitled to relief under a unilateral contract theory.

Accordingly, the court dismisses Cardiology Associates' breach of contract counterclaim.

**B.**

Cardiology Associates also argues that Odyssey is liable for space rental fees under a theory of unjust enrichment. However, Cardiology Associates has not alleged sufficient facts showing that this claim is plausible, and the court dismisses it.

Unjust enrichment is an equitable claim arising from the simple principle that "one person may not enrich himself unjustly at the expense of another." Rhinehart v. Pirkey, 126 Va. 346, 351, 101 S.E. 353, 354 (1919). In the absence of an express or enforceable contract, the law nevertheless will imply a promise to pay if the circumstances establish unjust enrichment. Ellis & Meyers Lumber Co. v. Hubbard, 123 Va. 481, 96 S.E. 754, 760 (1918). To recover on an unjust enrichment theory, the claimant must show: (1) he conferred a benefit on the other party; (2) the other party had knowledge that the claimant was conferring the benefit; and (3) the other party accepted the benefit under circumstances that render it inequitable for him to retain the benefit without paying for the value he received. See Nossen v. Hoy, 750 F. Supp. 740, 745 (E.D. Va. 1990).

Here, the parties' contract for on-site nuclear imaging services is silent on the question of their post-termination obligations, so it is conceivable that with the contractual obligations of the parties possibly at an end, circumstances could arise sufficient to support a claim for unjust enrichment.[3] But Cardiology Associates must plead facts that establish more than a conceivable claim, it must plead facts showing a plausible claim. It must plead facts showing that it actually

---

[3] Odyssey argues that Cardiology Associates' demands lack any support in the express terms of the contract governing the commercial relationship between the parties. It contends that the absence of such a term indicates that Cardiology Associates' expectations of payment or the removal of the equipment were neither anticipated nor objectively reasonable under the circumstances.

5

conferred a benefit on Odyssey and that Odyssey "accepted" the benefit under circumstances that would render it inequitable for Odyssey not to pay. But Cardiology Associates' counterclaim for unjust enrichment is scant on facts. For example, assuming Cardiology Associates had a right to terminate the contract, Cardiology Associates still has pleaded no facts showing: how much space Odyssey's equipment occupied; how long it occupied the space; whether Cardiology Associates had to take any special measures to maintain the equipment; circumstances demonstrating that Odyssey could or should have removed its equipment with greater dispatch; or how Odyssey benefitted. In short, Cardiology Associates has not alleged sufficient facts from which the court could conclude that it has shown that it is entitled to relief. Accordingly, the court grants Odyssey's motion to dismiss Cardiology Associates' unjust enrichment counterclaim.

### III.

Odyssey maintains that the reasoning of Iqbal and Twombly apply to both the pleading of claims and defenses with equal force, and has moved to strike Cardiology Associates' affirmative defenses under Rule 12(f) on the ground that they are not plausible. However, Rule 8's language governing the pleading of defenses does not track the language of Rule 8(a) governing the pleading of claims, the focus of those decisions. Because Rules 8(b) and 8(c) do not require a party to "show" that it is entitled to a defense, the court declines to hold affirmative defenses to the same pleading standards required by Rule 8(a). Instead, the court simply looks to whether those defenses are contextually comprehensible. Applying that test here, the court strikes all but two of Cardiology Associates' affirmative defenses.

Iqbal and Twombly addressed only Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In Iqbal, the Court reasoned that "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'shown'– that the pleader is entitled to relief." 129 S. Ct. at 1950. In contrast to the language of Rule 8(a) governing claims, the pertinent language of Rule 8(b) governing defenses generally provides that "in responding to a pleading, a party must . . . state in short and plain terms its defenses to each claim asserted against it," FED. R. CIV. P. 8(b)(1)(A), and Rule 8(c) governing affirmative defenses in particular provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(c)(1). Neither Rule 8(b) nor Rule 8(c) contains language that precisely corresponds to Rule 8(a)'s language which requires the pleader "show" that he is entitled relief.[4]

Pleading standards that account for the differences between the pleading of claims and defenses make sense. Knowledge at the pleading stage is often asymmetrical, disproportionately favoring the pleading of a claim by a plaintiff who has had the opportunity to time its filing. While the plaintiff often can conduct an investigation before filing the complaint to ensure its allegations are adequately supported, the defendant must respond quickly after being served. See FED. R. CIV. P. 12(a)(1)(A) (requiring a defendant to respond within twenty-one days of being

---

[4] Courts are divided over whether the plausibility standard articulated in Iqbal and Twombly apply to affirmative defenses. Compare Racick v. Dominion Law Assocs., 2010 WL 3928702, at *5 (E.D.N.C. Oct. 6, 2010) (articulating the majority position that Iqbal's plausibility standard applies to the pleading of affirmative defenses) with Wells Fargo & Co. v. United States, 2010 WL 4530158, at *1–2 (D. Minn. Oct. 27, 2010) (finding that Iqbal does not apply to affirmative defenses based on the different language contained in Rules 8(a) and 8(b)).

served with the complaint, unless the defendant has waived service). Thus, the primary purpose of Rule 8(c) is to ensure that the plaintiff has adequate notice that a defense will be raised at trial or in a subsequent dispositive motion, Hewitt v. Mobile Research Tech., Inc., 285 Fed. App'x 694, 696 (11th Cir. 2008), and not to "show" the court or the plaintiff that the defendant is entitled to the defense. The court finds that, because of these differences, Rules 8(b) and 8(c) do not require a court to subject defenses pleaded by a defendant to the same stringent plausibility standards that Iqbal and Twombly demand of claims for relief under Rule 8(a). However, this is not a license for a responsive pleader to either plead a form book list of affirmative defenses or plead those defenses so cryptically that their possible application will remain a mystery until unearthed in discovery. Rule 11 proscribes the first practice, and Rule 12(f) provides a remedy for the second.

Rule 12(f) motions are generally disfavored because they are often employed as a dilatory tactic. See, e.g., Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001). Nevertheless, dismissal under Rule 12(f) is appropriate where the defendant has not articulated its defenses so that they are contextually comprehensible. See id. (affirming the district court's decision to strike a defense under Rule 12(f) where the defendant provided no factual basis for it). Even under the pre-Iqbal notice pleading standards, defenses had to be "stated in an intelligible manner" in order to give the opposing party "adequate notice" of the nature of the defense. Davis v. Sun Oil Co., 148 F.3d 606, 614 (6th Cir. 1998) (Boggs, J., concurring in part and dissenting in part).

The court also notes that the striking of a defense from a pleading is not always, in reality, a drastic remedy. The defendant may seek leave to amend, and "the court should freely give

leave when justice so requires." FED. R. CIV. P. 15(a)(2). Just as Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," Iqbal, 129 S. Ct. at 1950, the court should not construe and administer the Rules in a manner that forces the plaintiff to incur undue expense to discover the secrets of a contextually incomprehensible affirmative defense. Rather, the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination [of the action or proceeding.]" FED. R. CIV. P. 1. This will require the court to call upon "its experience and common sense," Iqbal, 129 S. Ct. at 1950, in order to determine whether the motion to strike is an unnecessary sideshow at odds with the "just, speedy, and inexpensive determination" of the action or proceeding. These are the precise concerns that animated the Supreme Court's decisions in Iqbal and Twombly.[5]

Here, Cardiology Associates has asserted nineteen defenses it refers to as affirmative defenses. However, some of the purported affirmative defenses are not affirmative defenses at all, such as Cardiology Associates' assertion that Odyssey's "complaint fails to state a cause of action." (Def.'s Am. Answer & Countercl. ¶ 6.) Others are cloaked in the language of an affirmative defense, but are devoid of factual support that would make them contextually comprehensible. For example, Cardiology Associates' third affirmative defense asserts that Odyssey "is barred by the doctrine of estoppel by its own words and actions and upon which [Cardiology Associates] relied and acted, including with regard to the alleged Agreement and

---

[5] Though the court does not apply Rule 8(a)'s plausibility standard to defenses pleaded under Rules 8(b) or 8(c), and instead requires that Cardiology Associates articulate contextually comprehensible defenses, the latter standard will often produce the same result as the former and aid in the "just, speedy, and inexpensive" resolution of the case.

[Odyssey's] prior representations to its prejudice...." (Id. ¶ 8.) There are no facts alleged in any of the pleadings that makes this defense contextually comprehensible.

A review of Cardiology Associates' nineteen "affirmative defenses" discloses that only its sixth and ninth affirmative defenses, relating to whether the contract violates public policy and whether Odyssey can legally provide services in North Carolina, are contextually comprehensible.[6] Accordingly, the court denies Odyssey's motion under Rule 12(f) to strike defenses six and nine, and grants Odyssey's motion to dismiss Cardiology Associates' remaining affirmative defenses.

## IV.

For the reasons stated above, the court: dismisses Cardiology Associates' Amended Counterclaims; strikes Cardiology Associates' purported affirmative defenses, with the exception of affirmative defenses six and nine; and grants it leave to amend within ten (10) days, if it is able do so within the constraints of Rule 11.

**ENTER**: This November 24th, 2010.

UNITED STATES DISTRICT JUDGE

---

[6] The court expresses no opinion on the question of whether these affirmative defenses are plausible. The parties have not thoroughly briefed whether these defenses may be considered plausible under the applicable substantive law. Of course, the fact that the plausibility of these defenses has not been briefed illustrates the court's concern with applying the stringent pleading standards that apply to claims under Rule 8(a) to defenses pleaded under Rules 8(b) or 8(c). Requiring the intermittent briefing of all comprehensible and conceivable affirmative defenses would add the type of unnecessary delay and cost to the pretrial litigation process that Iqbal and Twombly sought to minimize.